ISAAC SANFORD, TRUSTEE *vs.* HUBERT G. SCOTT AND ANOTHER.

Under the act of 1868 relating to replevin of property attached, the *real* and not the *alleged* value of the property is the test of jurisdiction.

The rules applicable to the different classes of cases of replevin, as to the question of jurisdiction.

REPLEVIN for a colt, brought to a justice of the peace, appealed by the plaintiff to the Superior Court, and reserved for advice. The case is fully stated in the opinion.

*Cothren*, for the appellant, cited Gen. Stat., tit. 1, ch. 15, sec. 342; acts of 1866–7–8, 139, 183.

*Fields*, for the appellees, cited acts of 1866–7–8, 183; *Small* v. *Swain*, 1 Maine, 133; *Davenport* v. *Burke*, 9 Allen, 116; *Perkins* v. *Perkins*, 7 Conn., 558; *Lockwood* v. *Knapp*, 4 id., 257; *Wildman* v. *Rider*, 23 id., 172; *Cogswell* v. *Wheaton*, 1 Root, 458; 1 Swift Dig., 606.

BUTLER, C. J. The question reserved for our advice in this case is of practical importance, and as the facts are few and admitted by a demurrer, it may be well to state them.

Scott & Morris brought suit for debt against Sanford, and attached a colt as his property. Sanford thereupon, claiming that the colt belonged to his wife, and that he held it under

the statute as her trustee, brought this action of replevin as such trustee. In the writ he alleged the property to be of the value of fifty dollars, and laid his damages at fifty dollars, citing Scott & Morris to appear before a justice of the peace to answer to the suit. Scott & Morris appeared, and pleaded in abatement to the jurisdiction that the colt was of the value of one hundred and fifty dollars, to which plea Sanford demurred, and the justice decided that the suit should abate. Sanford thereupon appealed the case to the Superior Court, and there Scott & Morris moved to erase it from the docket, claiming that the justice had no jurisdiction and the proceedings were void, because jurisdiction in such cases is made by statute to depend on the *real*, and not the *alleged value* of the property. Whether that is so or not is the only question reserved which has been insisted upon in argument.

The defendant in support of his motion relies on the statutes of 1867–8, claiming that although by the former the General Assembly made the value alleged, and not the damages demanded, the test of jurisdiction, yet by dropping the word " alleged" in the latter, they made the *actual* value, and not the value alleged in the writ, the ground of jurisdiction. The plaintiff claims that there was no such design, and that the omission was unmeaning or inadvertent. To determine this issue between the parties, we must inquire if there was any mischief to be remedied which furnishes an apparent and sufficient motive for the action of the General Assembly ; for, unless we can see that there was such motive arising from a mischief to be remedied, we should assent to the claim of the plaintiff that no such alteration of the law was intended.

The action of replevin is a complicated one. There are four classes of cases in which the writ may be used, where the rights of the parties and their relation to the property replevied differ. There is a corresponding difference respecting the rules applicable to each. These classes are, first, where the owner of cattle impounded replevies them from the pound, inserting in his writ a count in trespass against the impounder for the taking, and demanding his damages therefor. In such case, if the impounder defends and does not

deny the taking, he avows it on the ground that the cattle were taken *damage feasant*, and demands judgment for the damage done by them. In that class of cases both parties become actors plaintiff—both demanding judgment for damage. But there is no question of title to the cattle, and their value is immaterial ; for the owner has obtained them by his writ, and the defendant does not claim them, nor ask a return. In such cases the amount of damages claimed furnishes the usual and a proper rule of jurisdiction in the first instance.

The second class of cases is that in which the property of a person has been attached, in a suit brought against him for debt or damage, and he replevies the goods for the purpose of regaining possession of his property, and substituting a bond therefor. In such case the plaintiff in replevin may insert a count in trespass for the taking, and demand judgment for damages. The attaching creditor avows the attachment, and demands a return of the goods to the officer, that they may be continued in the custody of the law until execution can be obtained and levied thereon, or his debt be paid. There is in this class of cases no question of title between the parties to be tried, but the rights of the defendant may involve a much greater amount than that which gives jurisdiction to a justice of the peace. In such cases the value of the property, or amount of the debt or damage for which it was attached, would seem to be the proper rule of jurisdiction.

In the third class of cases the owner of property attached in a suit to which he is not a party, and as the property of the defendant in such suit, brings his action of replevin against the attaching creditor, demanding his property and damages for the taking. He has his property restored to him by the writ, and as the amount of damages he claims is optional with him, he may lay them so low as to bring the case within the jurisdiction of a justice of the peace, and, so far as he is concerned, he may be satisfied, especially if he selects his justice. But the rights of the attaching creditor, if he avows the attachment and claims the property to belong to the defendant in the original suit, raises an issue of title to the property, which must necessarily be determined. The value

Sanford *v.* Scott.

of the property may be very large, and may involve a compli-
cated question of fraudulent conveyance. It does not seem
to be right that the plaintiff in replevin, by his mere demand
of damages for the taking, should compel the attaching cred
itor to try the complicated question of title before a justice
whom the plaintiff in replevin may have selected, or appeal ;
yet such was the law from 1848 to 1866.

The fourth class of cases is that in which the owner of
property in any manner taken from him and wrongfully de-
tained, may have his writ of replevin to recover possession
of it. The writ did not lie in this state in such a case after
1821, until authorized by the statute of 1863. In this class
of cases the question of title may arise, and the value of the
property be such that the question of title could not be tried
before a justice of the peace in any other action at law.

We see that in the third and fourth classes of cases there
may be a question of title to property of great value to be
tried. It has never been the policy, and it is doubtful whether
it has ever been the intention, of our legislature since 1821,
to submit such a question to the determination of a justice
of the peace, or authorize that magistrate to take jurisdiction
of it. Prior to the revision of 1821, no distinction was made
as to jurisdiction between actions of replevin and other actions,
nor were there any statutory regulations recognizing the dis-
tinction between the classes of cases. The whole statute was
embraced in a single section, and was copied from the code
of Massachusetts in 1672. It gave liberty to replevy " cattle
or other goods and chattels distrained, attached, seized or
extended," provided sufficient security was " put in" to pros-
ecute, and answer all damages and dues which the adverse
party might recover. No provision was made in relation to
jurisdiction, and the action was left, in that respect, to the
general provision which regulated jurisdiction by the alleged
" debt, trespass, damage or other matter in demand." The
revisers of 1821 saw the importance of classifying the cases
in which the writ might be issued, and of regulating the juris-
diction by special provision in the different cases. They pro-
vided therefore that in cases where cattle were impounded

and distrained, jurisdiction should be governed in the first instance by the damages demanded in the writ, but recognizing the rights of the avowant as in effect a plaintiff, authorized the *removal of the case to a higher court*, if the damages demanded by the avowant should exceed the jurisdiction of the court. That was a very proper provision, but it was omitted in the revision of 1848. In cases where property was attached, the revisers of 1821 further provided that the writ, if taken out by the defendant in the suit, should be *returned to the same court* to which the *original suit was returnable*. And in cases where the owner of the goods was not a party to the original suit, and replevied them, he might cite the attaching creditor before "a *proper court*" to answer for the taking. The last provision is indefinite and ambiguous, but it was continued in force in the statute until 1867, although other provisions were changed. We are not aware that it received any judicial construction, probably because defendants in replevin generally availed themselves of their right of appeal, where the value of the property was considerable, and the title was put in issue. When in 1863 the writ of replevin was again authorized in all cases where property was detained, the legislature found it necessary to regulate the jurisdiction, which they did by providing that it should be determined by the *alleged value* of the property. In 1867 they apparently saw the importance of regulating the jurisdiction in cases where property was attached in like manner, and the indefiniteness and ambiguity of the provision introduced in 1821, and enacted that in the class of cases where property was attached, jurisdiction should be determined by the alleged value of the property. In 1868, apparently discovering that in such case it was in the power of the plaintiff in replevin, by a false allegation of value, to bring the action before a justice of the peace, notwithstanding the value of the property might in fact be very great, and the matter in dispute be a complicated question of title, they re-enacted the provision, and dropped the word "*alleged*." We can see from the foregoing examination that there was mischief to be remedied, which might properly have influenced the General Assembly

in passing the act of 1868, and we must presume that they were in fact influenced by it, and changed the law accordingly.

There are difficulties undoubtedly in the application of such a test of jurisdiction, but they are not so great as to rebut the presumption that the law was intentionally changed. Discrimination in relation to jurisdiction in the different classes of cases is necessary, as we have seen, to protect the rights of the defendant in replevin. The discrimination adopted in 1821, if its provisions had all been sufficiently clear and specific, would have been the best yet attained. The changes of 1848 were steps backward; the changes of 1867–8 are steps forward again, but upon different ground. It is however our province to construe the law, and not to make it.

For these reasons we advise the Superior Court that the case should be stricken from the docket.

In this opinion the other judges concurred.